891 F.2d 286
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ALCO STANDARD CORPORATION, a body corporate; Paper
Corporation of America, a body corporate,
Plaintiffs-Appellees,
v.
Stanley BRETNER, Defendant-Appellant,
and
International Investors, Limited, a body corporate; Gerald
Bush; Eagle Press, Incorporated, a body
corporate; George Aquilla, Defendants.
 No. 89-1414.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 5, 1989.
Decided: Nov. 17, 1989.
 
 John Joseph Pyne (Peter E. Derry, Pyne & Derry P.C., on brief), for appellants.
 Gary I. Strausberg (Wayne M. Willoughby, Janet & Strausberg, on brief), for appellees.
 Before CHAPMAN, Circuit Judge, and HAYNSWORTH and BUTZNER, Senior Circuit Judges.
 CHAPMAN, Circuit Judge:
 
 
 1
 Stanley Bretner[1] appeals the denial by the district court of his motions for a directed verdict, a judgment n.o.v. or for a new trial or remittitur. This suit was brought by Alco Standard Corporation [Alco] against Bretner, his partner Gerald Bush, and their wholly owned company, International Investors, Ltd. [IIL], under numerous theories. The substance of the allegations was that Bretner and Bush used IIL to purchase Eagle Press Corporation [Eagle], a printing concern, at no cost to themselves, and in a period of four months took large sums of money from Eagle, depleted its assets and income, and caused its demise, all at the expense of Alco, which was Eagle's principal paper supplier. A jury found against each of the defendants on five causes of action, which included fraud, negligent misrepresentation, conspiracy, conversion, and unjust enrichment, and awarded $800,000 in compensatory damages. We affirm.
 
 I.
 
 2
 Eagle owed Alco $950,000 for past paper deliveries. This debt exceeded Eagle's assets. In March of 1985, IIL, a corporation wholly owned, controlled, and operated by Bush (51%) and Bretner (49%), purchased Eagle. In April, Bretner and Bush met with Alco officials to discuss future business dealings and the repayment of the $950,000 debt. Bretner and Bush made a number of representations to Alco officials, including: (1) that they were not taking any compensation from Eagle and would not take any compensation until Eagle became profitable; (2) that they intended to operate Eagle as a going concern, to make it profitable, and not to sell its assets; and (3) that all paper purchased from Alco would be paid by C.O.D. wire transfer, and that any deviation from such policy would only occur with the express approval of Mr. McKiernan, Vice President of Finance and Administration at Alco. Bretner and Bush made similar representations to Maryland National Bank [the Bank].
 
 
 3
 However, unknown to the Bank or to Alco, Bush and Bretner had set up a contract between IIL and Eagle, whereby IIL offered "consulting services" in managing and operating Eagle in return for payment of $50,000 a month. During the period that Bush and Bretner operated Eagle, approximately $403,000 was transferred to IIL, and additional monies were paid to IIL pursuant to favorable lease arrangements with Eagle.
 
 
 4
 In early July 1985, upon discovery of sums being paid to IIL and other losses, the Bank cut off Eagle's credit. Bush and Bretner then obtained approximately $176,000 of paper on credit from an Alco employee, who extended credit without authority. Subsequent to the credit deliveries, Bretner and Bush met again with Alco officials, but failed to disclose the sizable payments they were receiving through IIL or the credit deliveries from Alco.
 
 
 5
 At the end of July, the Bank declared a default on Eagle's mortgage, Bush and Bretner resigned, the bank took over the company and liquidated it. Eagle's debts to Alco, including the credit deliveries and the original $950,000 debt, were unpaid.
 
 
 6
 Bretner now argues that there was insufficient evidence of his wrongdoing under any of the five theories to support the jury verdict against him. We find that there was sufficient evidence to support the finding of fraud, and affirm.[2]
 
 II.
 
 7
 The claim of fraud is predicated upon the statements made by Bretner and Bush to Alco at the April meeting, and "representations of omission" made in July. On appeal, Bretner concedes that arguably there was sufficient evidence, at least with respect to representations that no compensation would be taken and that Eagle was being turned around financially, to prove that the defendants made a misrepresentation, knew of its falsity, and made it with the intention that plaintiffs would act in reliance on it.
 
 
 8
 We find there was also substantial evidence that the defendants falsely represented that they would not accept paper on credit both in April and in July. The Alco employee who delivered the paper on credit testified that the defendants knew that the deliveries were in violation of Alco's policy. The defendants' silence in July reaffirmed their April pledge not to accept paper on credit unless approved by McKiernan. Based upon the defendants' contrary actions only a few months after their initial agreement, the jury could have concluded that the April promise, like other misrepresentations, was made only to pacify Alco while Bretner and Bush siphoned off Eagle's assets.
 
 III.
 
 9
 Although the representations were false, Bretner claims that Alco did not rely on them to its detriment, and that any reliance was not justified. Bretner asserts that Alco would have continued shipping paper to Eagle regardless of what representations were made.
 
 
 10
 However, there was evidence of reliance and detriment in the testimony of two Alco officials that Alco forewent several alternatives to collect the $950,000 debt in favor of continuing to ship paper to Eagle, based upon the misrepresentations. The foregone alternatives included: (1) working out a refinancing plan; (2) enforcing notes guaranteed by the former owner; (3) working out an arrangement with another potential buyer; or (4) forcing Eagle into involuntary bankruptcy. Foregoing alternatives to secure a party's financial position as a result of misrepresentations will support a damage claim grounded in fraud. General Motors Acceptance Corp. v. Central Nat'l Bank, 773 F.2d 771 (7th Cir.1985). There was substantial evidence that Alco's reliance was justified.
 
 IV.
 
 11
 The remaining issue is whether Alco was damaged as a result of its reliance. Bretner argues strenuously that because Eagle's debts exceeded its assets and the Bank had a superior claim to those assets, Alco could not have recovered the $950,000 debt by any of the alternative actions that it forewent. We are not persuaded.
 
 
 12
 The actions foregone by the plaintiff were among the most common and logical creditor remedies. While it is possible that they would not have benefitted Alco to the extent of the jury award, it is unlikely that they would not have gained Alco something. For example, although Bretner now claims that no buyer would purchase Eagle due to its debts, his assertion flies in the face of his own purchase of the debt-ridden company. Similarly, if Eagle's bankruptcy were structured as a reorganization, the company may have remained in business until much or all of the debt was repaid.
 
 
 13
 Had the defendants not misled the plaintiff, but had instead applied the $403,000 taken from Eagle toward improving the business or toward its debt, it is likely that Eagle could have survived and repaid a substantial portion of its debt to Alco. There was evidence that prior to Bretner and Bush's acquisition of Eagle, the debt to Alco had been reduced from $1.2 million dollars to $950,000. In addition, a Bank official suggested that, but for the defendants' wrongdoing, the Bank would not have liquidated Eagle. Given the reduction of the debt and the willingness of the Bank to continue financing, the jury reasonably could have concluded that the debt would have been repaid but for defendant's fraud.
 
 
 14
 Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.
 
 
 15
 Story Parchment Co. v. Paterson Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544, ---- (1931).
 
 
 16
 In addition to the nonpayment of the existing $950,000 debt, we find that the paper delivered on credit was properly included as a part of Alco's damages. Alco's reliance on the defendants' misrepresentations caused it to continue making paper shipments to Eagle. Although the credit deliveries were not authorized by Alco, the jury could have concluded that the Alco employee would not have been in a position to make the unauthorized credit deliveries had not Alco continued to do business with Eagle based on defendants' misrepresentations.
 
 V.
 
 17
 The unpaid debt was in the amount of $950,000. The unpaid credit deliveries totalled approximately $176,000. The verdict of $800,000 was within a reasonable range based upon the evidence presented. The substantial evidence requirement is satisfied, and the decision of the district court is therefore
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Only Bretner has appealed. The original complaint named as defendants Bretner, Gerald Bush, International Investors, Ltd., George Aquilla (former owner of Eagle), and Eagle Press Corporation. Aquilla and Eagle defaulted; Bush and International dismissed their appeals prior to oral argument
 
 
 [2]
 We need not and do not reach the issue of whether the same evidence supports the remaining counts